IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| H & C Corporation, Inc., | ) | Case No. 4:12-cv-00013-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| Puka Creations, LLC and | ) | |
| Robert Puka, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Before the Court is Defendant's Motion to Disqualify Counsel (ECF No. 41). Plaintiff filed a

Response in Opposition to the Motion, and Defendant filed a Reply. The matter is ripe for disposition.[1]

Plaintiff H&C Corporation, Inc., filed this copyright infringement action on January 3, 2012,

represented by William Y. Klett, III, of Nexsen Pruet Jacobs and Pollard law firm in Columbia, South

Carolina. Defendants filed an answer on November 21, 2012, after the court granted their motion to set

aside default. Defendants were represented by Sarah Day Hurley and Timothy D. St. Clair of Turner,

Padget, Graham & Laney law firm in Greenville, South Carolina. On April 22, 2013, attorney St. Clair

filed a Motion to Withdraw as Counsel on the basis that he was no longer with the firm and that Ms.

Hurley would continue to represent the defendants. The court granted the motion on April 24, 2013.

On May 10, 2013, the court granted a motion to appear *pro hac vice* by Perry Reed Clark on behalf of

the defendants.

The Declaration of Mr. Clark indicates that Mr. St. Clair served as lead counsel for the

---

[1] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion.
Unless so ordered, motions may be determined without a hearing."

1

defendants in the case and that he "was involved in substantial and confidential discussion about this case with defendants and was part of virtually all communications between defendants' California counsel and the Turner Padget law firm, including both telephone calls and emails." (ECF No. 41-2, p. 2). The affidavit further indicates that Mr. St. Clair was involved in settlement discussions regarding the case. The affidavit states that Mr. St. Clair became a partner with Nexsen Pruet on April 15, 2013 and that he never personally contacted the defendant parties regarding his move to another firm. Finally, the affidavit avers that Mr. St. Clair now works with attorney Sarah Kanos, who defendants contend has "day-to-day responsibility for this matter." (*Id*., p.3). Ms. Kanos is not an attorney of record in the case.

On April 22, 2013, James Long, Esquire, General Counsel for Nexsen Pruet, sent a letter to counsel for the defendants informing them that Mr. St. Clair had joined Nexsen Pruet and that "Nexsen Pruet has instituted a screening procedure to screen Tim St. Clair and Patti Weaver from having any involvement with Nexsen Pruet's representation of H&C in this matter, and from having any conversations with anyone at Nexsen Pruet about Puka Creations, LLC, or Robert Puka or the pending litigation." (*Id*., p. 4). On June 6, 2013, Mr. Clark sent a letter to Mr. Long informing him that Defendants would move the Court for an order disqualifying Nexsen Pruet on the basis of imputed disqualification.

This court has a "duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar." *In re Asbestos Cases*, 514 F. Supp. 914, 925 (E.D. Va. 1981) (citing *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp*., 518 F.2d 751, 757 (2nd Cir. 1975); *Latham v. Matthews*, Nos. 6:08-cv-02995-JMC, 6:08-cv-03183-JMC, 2011 WL 52609, at * 2 (D.S.C. January 6, 2011). The South Carolina Code of Professional Responsibility sets forth the ethical

standards for South Carolina attorneys who practice in this Court. *See* Local Civil Rule 83.I.08 and RDE Rule IV DSC. The moving party has the burden of proving that the opposing party's counsel should be disqualified. *Donaldson v. City of Walterboro Police Dept.*, No. 2:06-cv-02492-PMD, 2008 WL 906707 (D.S.C. March 31, 2008). "Because disqualification is such a drastic remedy, courts must 'avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel . . . and . . . [must] remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons.'" *Id.* at \*1, citing *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992).

South Carolina ethical Rule 1.10 "Imputation of Conflicts of Interest" provides in subsection (a) that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." Rule 407, SCACR, Rules of Prof. Conduct, Rule 1.10. Here, Mr. St. Clair and Mr. Klett are associated in the Nexsen Pruet firm, and Mr. St. Clair would be prohibited by Rule 1.9[2] from representing the plaintiff due to his previous representation of the defendant. Here, Puka has not waived the conflict. Therefore, it would appear that Nexsen Pruet is disqualified from representing the plaintiff.

Nexsen Pruet contends that it has put in place a screen between Mr. St. Clair and the rest of the firm. However, South Carolina's ethical rules do not provide for a screen in this situation. While Rule 1.10 allows programs providing legal services to avoid imputed disqualification by screening lawyers

---

[2] Rule 1.9(b) provides: "A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client (1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing."

from conflicting matters within the office, this rule however applies only to public defenders, legal services organizations, and similar programs. Comment 9 to Rule 1.10 specifically states: "Paragraph (e) applies only to programs of the type delineated and does not authorize screening by private law firms to avoid imputed disqualification." Nexsen Pruet relies upon ABA Model Rule 1.10. However, that rule has not been adopted in South Carolina.[3]

As noted by Judge Duffy in *Donaldson*, "the court acknowledges that granting this Motion to Disqualify deprives the Plaintiff of his chosen counsel and increases the length of time this case will remain pending. However, the court is mindful of its responsibility to uphold the South Carolina Rules of Professional Conduct . . ." 2008 WL at *4.

The Court therefore grants [41] Motion to Disqualify Nexsen Pruet law firm. The deadlines in the case are stayed for ninety (90) days to allow time for the plaintiff to obtain new counsel.

**AND IT IS SO ORDERED**.

October 11, 2013                           s/R. Bryan Harwell
Florence, SC                               R. Bryan Harwell
                                           United States District Judge

---

[3] In an article entitled "Screening to Avoid Conflicts of Interest–What, When, and How?", 21 S.C. Lawyer 10 (Sept. 2009), Professor Nathan M. Crystal states: "*Screening when a disqualified lawyer joins a new firm under revised ABA Model Rule 1.10(a)—not yet adopted in South Carolina*. In February the ABA adopted revisions to Model Rule 1.10(a) allowing a firm that hires a disqualified lawyer to avoid disqualification by screening the disqualified lawyer. Under the previous version of Rule 1.10, if the lawyer who joined the firm actually possessed confidential information about an adverse party of the new firm, then the firm would be disqualified from handling the case, and screening would not remove the disqualification. Critics of the old rule argued that it unnecessarily limited the ability of lawyers to change firms without providing significant protection to clients."